IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES MOON, as personal representative ) <br> of the Estate of Randy Eugene Moon, ) <br> ) <br>     Plaintiff, ) <br> v. ) <br> ) <br> WERNER ENTERPRISE, INC., *et al.*, ) <br> ) <br>     Defendants. ) | CASE NO. 1:04-cv-950-F <br> (WO) |

## **MEMORANDUM OPINION AND ORDER**

This lawsuit arises out of an automobile accident in which a tractor-trailer, driven by defendant Robert Waggoner (hereinafter "Waggoner") and owned by defendants Werner Enterprise, Inc. (hereinafter "Werner") and Drivers Management, Inc. (hereinafter "DMI"),[1] collided with an automobile which was being driven by decedent Randy Moon. Plaintiff James Moon (hereinafter "Plaintiff"), in his capacity as personal representative of the estate of Randy Moon,[2] brings this action under the Alabama Wrongful Death Statute, Ala. Code § 6-5-410 (1975), alleging that Waggoner and Werner recklessly, wantonly and negligently caused the accident.

This cause is before the Court on the Motion for Partial Summary Judgment filed by the defendants on May 11, 2005. (Doc. # 43). The Court has carefully considered the

---

[1] When appropriate the Court will hereinafter refer collectively to the defendants as "Defendants."

[2] Plaintiff is the father of Randy Moon.

arguments made in support of and in opposition to the motion, and for the reasons set forth below, the Court finds that the motion is due to be DENIED.

## I. JURISDICTION AND VENUE

Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1441(a) (removal jurisdiction). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to Defendants' motion for partial summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

*A.    Facts*

On February 19, 2004, a tractor-trailer driven by Waggoner collided with an automobile driven by decedent Randy Moon (hereinafter "Moon") in Enterprise, Alabama. At the time of the accident, Waggoner was driving a tractor-trailer owned by Werner and DMI. The accident occurred at the intersection of Boll Weevil Circle, Rucker Boulevard and Glover Avenue.[3] Prior to the accident, Waggoner was driving northbound on Boll Weevil Circle. Waggoner, traveling between 30-35 miles-per-hour, approached the traffic lights at the intersection in the far right lane for through traffic. Waggoner testified that, as he approached the intersection, he looked at the traffic lights governing his direction and saw that both were green.[4] Waggoner thus proceeded through the intersection.

Moon, driving a sport-utility vehicle, was stopped at the traffic light in the far right lane on Rucker Boulevard headed westbound. The testimony of numerous witnesses[5] establish that Moon was at a standstill waiting for the traffic lights which governed his direction to turn from red to green. Once the traffic lights governing Moon's direction turned green, Moon advanced into the intersection. Waggoner, seeing Moon's vehicle enter the

---

[3] At this four-way intersection, Boll Weevil Circle intersects with Rucker Boulevard and Glover Avenue. Boll Weevil Circle runs north and south through the intersection, Rucker Boulevard connects to the intersection from the east and Glover Avenue connects to the intersection from the west. In other words, Glover Avenue changes to Rucker Boulevard as one drives west to east at the intersection and Rucker Boulevard changes to Glover Avenue as one drives east to west at the intersection. (Defs.' Ex. 1).

[4] This fact is in great dispute.

[5] These witnesses include Kenneth Edmondson, Don Tyler, Joseph Qualls, Rosemary Carter, Judith Thomas and Cynthia Brabham. (Defs.' Exs. 6-11).

intersection, immediately applied his brakes in an attempt to stop his truck or avoid the collision. Waggoner's attempt was to no avail.[6] Waggoner collided with Moon's vehicle and pushed the vehicle across the median into the left turn lane on southbound Boll Weevil Circle. Two days after this collision, Moon died.

B.    *Procedural History*

On September 23, 2004, Plaintiff filed this wrongful death action in the Circuit Court of Coffee County, Alabama, Enterprise Division alleging three counts against Waggoner, Werner and DMI. (Doc. # 1, Compl.). In the first count, Plaintiff alleges that Defendants Waggoner, Werner and DMI recklessly, wantonly and negligently caused Waggoner's vehicle to collide with Moon's vehicle. In the second count, Plaintiff alleges that Defendants Werner and DMI negligently, wantonly and recklessly hired, trained and supervised Defendant Waggoner. In the third count, Plaintiff alleges negligent and wanton claims against fictitious parties.[7] Plaintiff seeks damages for the wrongful conduct plus an award of costs and expenses.

---

[6] There is neither evidence that Waggoner was speeding at the time of the accident nor that alcohol or drugs played any part in the accident. There is evidence that Waggoner may have been using his cellular phone at the time of the collision, however whether this played any part in the accident is unknown.

[7] The Court will not address Plaintiff's claims against "Fictitious Defendants A through C" because fictitious party practice is not authorized by either the Federal Rules of Civil Procedure or any federal statute. *See New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997). Accordingly, the fictitious defendants and Plaintiff's claims alleged against said defendants in Count Three of the Complaint are due to be dismissed. *See Edwards v. Ala. Dept. of Corrs.,* 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000) (dismissing the fictitious defendants).

Defendants Werner and DMI removed the case to this court on October 6, 2004, and Defendant Waggoner consented to the removal. (Doc. # 1, Notice of Removal & Consent to Removal). On May 12, 2005, the Court dismissed Count Two of the Complaint by granting a motion filed by Plaintiff requesting such relief. (Docs. # 44 & 45). Consequently, the only claims which remain in this action are those alleged in Count One of the Complaint. Those claims include the one at issue in the motion presently before the Court: Plaintiff's claim for wantonness.

**IV.  DISCUSSION**

*A.   Applicable Law*

When a federal court exercises jurisdiction based upon diversity of citizenship, the court is bound to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of- law rules. *Strochak v. Federal Ins. Co.,* 109 F.3d 717, 719-20 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because Plaintiff's claims sound in tort, Alabama's choice-of-law rules require this Court to apply Alabama law:

> *Lex loci delicti* has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.

*Fitts v. Minnesota Min. & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991) (citations omitted).

*B.  Plaintiff's Wantonness Claim*

6

Defendants move for summary judgment only on Plaintiff's wantonness claim arguing that he cannot prove the essential elements of that claim. Under Alabama law, to survive summary judgment on the issue of wantonness, Plaintiff must provide substantial evidence creating a genuine issue of material fact that Defendant Waggoner acted with reckless or with conscious disregard to the rights or safety of others in his operation of the tractor-trailer. *Ala. Code* § 6-11-20;[8] *Monroe v. Brown,* 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) (Thompson, J.) ("Wantonness . . . has been defined by the Supreme Court of Alabama as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."); *Tolbert v. Tolbert,* 903 So.2d 103, 115 (Ala. 2004) (affirming summary judgment on a wantonness claim arising from an automobile accident where evidence did not establish "more than a showing of some form of inadvertence on the part of the driver or that it rose to the required showing of some degree of consciousness on the part of the defendant that injuries are likely to result from his act or omissions") (citations

---

[8] The Statute provides:

> Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with disregard to the plaintiff . . . WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.

§ 6-11-20(b)(3).

omitted).[9]

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wantonness, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . . Wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act . . .

*Tolbert,* 903 So.2d at 115 (internal quotations and citations omitted). "What constitutes wanton misconduct depends on the facts presented in each particular case." *Id.*

Although, under *Erie,* this Court must apply the Alabama definition of wantonness, "in diversity cases federal courts apply a federal rather than state test in determining the sufficiency of the evidence to create a jury question . . ." *Salter v. Westra,* 904 F.2d 1517, 1524 (11th Cir. 1990). In the context of summary judgment in the federal arena, the test is whether, in viewing the substantial evidence in the light most favorable to the plaintiff, a genuine issue exists for trial. *Monroe,* 307 F. Supp. 2d at 1271.

To survive summary judgment, Plaintiff must establish a genuine issue of fact as to whether Waggoner (1) acted consciously when he drove through the intersection when the

---

[9] In *Tolbert,* a child and his grandmother were traveling by car in a light rain. As the car traveled downhill, the child's grandmother failed to negotiate an "S" curve, skidded into the opposing lane of traffic and collided with another vehicle. The child, the child's grandmother, and the driver of the other vehicle were all killed. The child's father filed a wrongful death action against the grandmother's estate, claiming the grandmother was operating her vehicle wantonly. 903 So.2d 103.

light regulating his direction of traffic was red,[10] and (2) was conscious, based on existing conditions, that injury was a likely or probable result of his actions. *See Monroe*, 307 F. Supp. 2d at 1272.[11] Under the first prong of the *Monroe* analysis, the substantial evidence, viewed in the light most favorable to Plaintiff, reflects that Waggoner intentionally entered the intersection, a conscious action which contributed to the collision. The second prong of

---

[10] In viewing the facts in the light most favorable to Plaintiff, the Court must accept the testimony of the witnesses which establish that Moon's traffic light was green. As a result, commonsense dictates that Waggoner's traffic light was red. The evidence submitted by Defendants bolsters this view of the facts. (Defs.' Ex. 9, Carter Dep. at p. 17) ("And I heard it, and I looked up and saw the truck going through the intersection. . . just a flash went through my mind that, boy, he's going fast and he just ran a red light."); (Defs.' Ex. 10, Thomas Dep. at 22) ("Our lights turn green, and all four of them turned green at the same time. . . and as I looked to the left, I see this eighteen-wheeler hauling on up through there. And I thought, my God, he's not stopping, and that's when I hit the brakes.").

[11] In *Monroe,* tractor-trailer driver Brown rear-ended the Monroes' vehicle while they were sitting at a red traffic light in Montgomery, Alabama. 307 F. Supp. 2d 1268. The collision occurred when Brown, thinking that the Monroes would proceed through the intersection under the yellow caution signal, accelerated to proceed through as well. The Monroes, however, chose not to proceed through the intersection, stopped. Brown's tractor-trailer collided with the Monroes' vehicle. The Monroes claimed negligence and wantonness seeking compensatory and punitive damages. Brown filed a motion for summary judgment on the Monroes' wantonness claim. *Id.* Based on the detailed factual evidence which presented a clear picture of the events underlying the collision, the court found that Brown decided to accelerate as he approached the intersection in an attempt to run a yellow light, "a conscious act that, at least, contributed to the accident." *Id.* at 1273. The court also found that Brown was conscious, based on the existing conditions, that injury was a likely or probable result of his acceleration in his attempt to run the yellow light. The court noted that Brown "had a duty to begin to slow his vehicle *and* keep sufficient distance between his tractor-trailer and the [Monroe vehicle] as they approached the yellow light so that he would not collide with the Monroes should [they] decide to stop rather than proceed through the yellow light. Instead, Brown consciously chose to accelerate and, thereby, consciously created a greater danger for all concerned." *Id.* at 1275 (emphasis in original). Brown's motion for summary judgment was denied under the summary judgment standard set out herein (whether, in viewing the substantial evidence in the light most favorable to the plaintiffs, a genuine issue exists for trial). *Id.* at 1271, 1276. Although the facts before this Court in the instant case are distinguishable from the facts of *Monroe,* the factual analysis set out in *Monroe* is current, instructive, and persuasive.

9

the *Monroe* analysis is problematic. This Court is asked to infer a state of mind, a conscious disregard, or a lack thereof on the part of Waggoner in proceeding into the intersection under the particular traffic conditions. However, the Court must remain mindful of the Supreme Court of Alabama's admonition that "[w]antonness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *McDougle v. Shaddrix*, 534 So.2d 228, 231 (Ala. 1988). In viewing the evidence presented in the light most favorable to Plaintiff, this Court finds that the question of the state of mind of Waggoner as to whether he acted with conscious disregard of the safety of others is best left to the jury. The Court thus concludes that summary judgment is inappropriate. *Wilkerson v. Johnson,* 868 So.2d 417, 420-21 (Ala. 2003) (reversing summary judgment because the parties had differing explanations of how the accident occurred and the jury could infer, from the plaintiff's account, that the defendant's negligence caused the accident).

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Partial Summary Judgment (Doc. # 43) is DENIED.

It is further ORDERED that Count Three of the Complaint is hereby DISMISSED.

DONE this 4th day of August, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE